People of the State of Illinois, Plaintiff-Appellee, v. John Battle and Joseph Cunningham, Defendants-Appellants.

Gen. Nos. 52,073, 52,074.

First District, Second Division.
November 12, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendants were found guilty by a jury of the unlawful sale of narcotics and each was sentenced to a term of 20 to 30 years in the penitentiary. They appeal.

Prior to the trial of this cause, a motion to suppress certain evidence was filed on behalf of both defendants. At the hearing on the motion, Chicago Police Officer William Walsh testified that he had a conversation at police headquarters on July 16, 1965 with Theodore Hall, a police informant, regarding a controlled purchase of narcotics. Officer Walsh testified that Hall had been successfully employed by him and his partner on five or six prior occasions, and by the police generally on numerous occasions, for such purpose.

The officer testified that Hall telephoned defendant Cunningham and arranged to meet him that same day in a park at 63rd Street and Stony Island Avenue in Chicago. Hall was then "strip searched," and when it was determined that he had neither money nor narcotics on his person, he was given $40 in prerecorded currency with which to effect the purchase.

Officer Walsh testified that he and his partner, Officer Walter Kienzle, transported Hall to the vicinity of 63rd and Stony Island and that they kept Hall under observation from a C.T.A. elevated platform for several minutes. Cunningham, who had been seated on a park bench nearby, approached Hall a few minutes after the latter arrived in the park and the two men engaged in a short conversation. Cunningham and Hall then walked west along the north side of 63rd Street to Harper Avenue where they entered a tavern on that corner. The

377

■■■■■■

police officers maintained their surveillance from across 63rd Street. Cunningham and Hall remained in the tavern a short while, after which Cunningham exited the tavern alone.

Officer Walsh testified that, upon observing Cunningham leaving alone, the officer crossed the street and entered the tavern, and was informed by Hall that Cunningham had gone to "meet his connection," and that he would "be right back." The officer returned to his position across the street and observed Cunningham return and reenter the tavern. A few minutes later Cunningham again exited the tavern alone and had a short conversation with defendant Battle in front of the tavern.

Cunningham then motioned to Hall to come out of the tavern and the three men walked north along the east side of Harper Avenue to an apartment building at 6227 Harper. Cunningham and Battle entered the building, while Hall remained outside, and the two men returned a few minutes later. Defendant Battle then left Cunningham and Hall and proceeded westerly, while the latter two men walked north along Harper Avenue.

Officer Walsh testified that he and Officer Kienzle followed Cunningham and Hall and, after Hall gave a prearranged signal indicating that the purchase had been completed, Cunningham was stopped and placed under arrest. The officer testified that Cunningham stated at the time he was placed under arrest, "I'm just a patsy for this!" Cunningham was searched by Officer Walsh and $10 of the prerecorded funds were found on his person. Meanwhile, Hall had given Officer Kienzle two tinfoil packets. Cunningham was then placed in the custody of other officers who had arrived at the scene, and Officers Walsh and Kienzle went in search of Battle, who was found and arrested by the officers about 15 minutes later near 62nd Street and Dorchester Avenue. A search of his person revealed the balance of the prerecorded funds which had been given to Hall by the officers.

The officers had no warrant for the arrest of either defendant. At the conclusion of Officer Walsh's testimony, the motion to suppress the currency as evidence was denied.

On February 14, 1966, defendants filed a motion for a severance, which was allowed primarily because of the statement made by Cunningham at the time of his arrest, to the effect that he was "a patsy for this," which was made outside the presence of Battle. Defense counsel also represented that a trial of both defendants together would be prejudicial to Cunningham inasmuch as Battle had a narcotics conviction in his record whereas Cunningham did not. When the matter came on for trial on September 14, 1966, the People made a motion to consolidate the trials of the two defendants. After the trial court was advised that the Cunningham statement would not be used by the People at trial and after it was determined that the defenses of the two defendants would not be antagonistic to each other, the motion to consolidate was allowed over objection of the defendants.

The evidence for the People adduced at trial through the testimony of Theodore Hall and Officer Walter Kienzle was generally the same as that taken at the hearing on the motion to suppress, with the exception that any conversation or statement made outside the presence of either or both of the defendants was not admitted into evidence.

In addition, Hall testified that after he and the two defendants had arrived at the apartment building on Harper Avenue, and before the two defendants entered the building, Cunningham requested money from him and he gave Cunningham the $40 in prerecorded funds. Hall also testified that as he and Cunningham proceeded northerly along Harper Avenue, Cunningham handed him two tinfoil packets, at which time Hall put on his jacket (which was the prearranged signal that the purchase had been completed). Cunningham was then placed un-

der arrest and was searched, and Hall gave the tinfoil packets to Officer Kienzle; it was stipulated between the parties that the packets contained heroin and marijuana. Hall also admitted at trial that he was a narcotics addict.

Weldon Burris testified on behalf of the defendant and stated that at the time of trial he was a resident of the Cook County Jail. He testified that on the morning of July 16, 1965, between 10:00 a. m. and 11:00 a. m., he was present at a dice game in which both Battle and Cunningham were participants. Burris testified that Battle had won about $65 in the game, and that the game broke up shortly when it was announced that the police were on the way. The witness stated that he had known defendant Battle since 1938 or 1939. On cross-examination Burris testified that the dice game in question might have been held on the 15th day of July rather than the 16th. He further stated that he saw Battle while in jail and prior to the trial, but that he never discussed his testimony with him.

Officer Kienzle testified in rebuttal to matters which contradicted defense witness Burris' testimony as to the whereabouts of the defendants at the time the sale of the narcotics was taking place.

Defendant Battle argues that, as to him, the denial of the motion to suppress the evidence was error, in that the search of his person and the seizure of the currency used as evidence against him were the result of an illegal arrest, made without a warrant or probable cause. We are of the opinion that the evidence adduced at the hearing on the motion to suppress showed that Officers Walsh and Kienzle had ample grounds to believe that Battle was involved in the sale of the narcotics to Hall, that they had probable cause upon which to arrest Battle without a warrant, and that the search incidental to that arrest and the seizure of the currency were consequently legal.

■ ■ An arrest may be made without a warrant where the arresting officer has reasonable ground to believe that an offense has been committed and that the party sought to be arrested committed the offense. People v. Wright, 41 Ill2d 170, 173–174, 242 NE2d 180. Evidence not otherwise admissible to establish the guilt of an accused, may be relied upon in determining whether probable cause existed upon which an arrest without a warrant could have been effected. People v. McCrimmon, 37 Ill2d 40, 43, 224 NE2d 822.

■ Officer Walsh testified at the hearing on the motion to suppress the evidence that Hall, who had previously been successfully employed by the police on numerous occasions as an informer, arranged to meet with Cunningham for the purpose of effecting a purchase of narcotics. He further testified that Hall was searched and given $40 in prerecorded funds with which to effect the purchase, and that Hall was transported by the officers to the location where he had arranged to meet Cunningham. The officer testified that he observed Cunningham make contact with Hall and then observed both men walk to and enter a tavern at the corner of 63rd and Harper. When Cunningham was observed by the officer leaving the tavern alone, the officer entered the tavern and was told by Hall that Cunningham had gone to meet his connection and that he would return shortly. Cunningham returned to the tavern, again exited alone and spoke to defendant Battle outside the tavern. Hall was then summoned from the tavern and the three men proceeded to the apartment building on Harper Avenue. Both defendants entered the building, while Hall remained outside. Upon their return to where they had left Hall, Battle walked westerly, away from Cunningham and Hall, and the latter two proceeded north along Harper. Shortly thereafter Cunningham was placed under arrest, at which time he stated, "I'm just a patsy for this," and a portion of the prerecorded funds

was found on his person. Hall, at this time, gave the two tinfoil packets to the officers. In the light of these facts, the officers had reasonable ground to believe that Battle was implicated in the sale of the narcotics to Hall, and were justified in placing him under arrest and searching his person. See People v. Roberta, 352 Ill 189, at 193, 185 NE 253.

It is apparent that the cases cited by defendant Battle in support of this position are inapposite on their facts. See Beck v. Ohio, 379 US 89; Mapp v. Ohio, 367 US 643; People v. Johnson, 61 Ill App2d 319, 210 NE2d 344; and People v. Chatman, 322 Ill App 519, 54 NE 2d 631.

Defendants next contend that they were not proven guilty beyond a reasonable doubt, inasmuch as the People's case rests entirely upon the uncorroborated testimony of Theodore Hall, an admitted narcotics addict. (People v. Watkins, 68 Ill App2d 389, 216 NE2d 494.) ■■ Contrary to defendants' contention, there was substantial corroboration of Hall's testimony, as revealed by the foregoing review of the facts. Cunningham was arrested immediately after the sale was completed and some of the prerecorded funds were found in his possession; Battle was located and arrested shortly thereafter and the balance of the prerecorded funds was found in his possession. The fact that Hall was out of the officers' sight for a short period of time does not of itself prove fatal to the People's case. People v. Hill, 83 Ill App2d 116, 227 NE2d 117; People v. Johnson, 87 Ill App 2d 390, 231 NE2d 647; People v. Golliday, 20 Ill2d 29, 169 NE2d 263.

The case of People v. Reddick, 107 Ill App2d 123, 245 NE2d 873, relied upon by defendants in this regard is not in point. Defendant Reddick and the informer were with other people at the time the alleged sale of the narcotics occurred. There was no evidence directly

linking Reddick to the sale, other than the testimony of the informer, who admitted that he was a narcotics addict and that he was awaiting trial for sale and possession of narcotics, and who further stated that he volunteered to participate in the controlled sale because he thought that the authorities would "go easier" on him. Further, none of the prerecorded funds was found on Reddick.

Defendants finally contend that it was prejudicial error for the trial court, without prior notice to the defendants or their counsel, to consolidate their trials.

Defendants' motion for a severance was allowed some seven months prior to the date set for trial, primarily on the ground of the statement which Cunningham made at the time of his arrest. There was also a representation at that time by the defense counsel that Battle had a prior narcotics conviction which would tend to prejudice Cunningham in the eyes of the trier of fact, inasmuch as Cunningham had no such prior record. When the People's motion for consolidation was presented, the prosecutor represented to the court that the Cunningham statement would not be used at trial. Defense counsel was then asked to specify in what manner the defenses of the defendants were antagonistic to each other, and defense counsel stated only that "the defenses of the two parties would not be similar."

Defense counsel was again asked in what manner the defenses would be antagonistic, and counsel, as before, referred to the past records of the two defendants. The trial court was assured by the prosecutor that both men had past records of infamous crimes.

■■ Joint defendants will be entitled to a severance of their trials only where it is shown that their individual defenses are in fact antagonistic to each other. People v. Dolgin, 415 Ill 434, 114 NE2d 389; People v. Banks, 103 Ill App2d 180, 243 NE2d 669. Defendants

asserted no grounds below and assert none here, other than speculation, which would have warranted a denial of the People's motion for consolidation of the trials.

Defendants cite the case of People v. McNeil, 102 Ill App2d 257, 243 NE2d 576, as standing for the proposition that it is an abuse of the trial court's discretion to force a defendant to trial upon a short notice. A reading of the McNeil case shows that it is not in point, for the reason that the defendant there was forced to go to trial although his attorney was appointed a short while before and had no defense to present. The court held that it was error to refuse to allow defendant's motion for a continuance for time to prepare a defense. Here the question was not whether the defendants had defenses, but whether the defenses were antagonistic.

The judgments are affirmed.

Judgments affirmed.

LYONS, P. J. and McCORMICK, J., concur.